Jaghoori v. Holder and Mrs. Jezik, we'll hear from you. How are we pronouncing the petitioner's name? Jaghoori? Jaghoori. Jaghoori. May it please the court. My name is Tamara Jezik and I represent Abdul Azim Jaghoori and his petition for review of an order of the Board of Immigration Appeals. The BIA affirmed the immigration judge's denial of Mr. Jaghoori's application for cancellation of removal for failure to satisfy the seven-year continuous residence requirement of the Immigration and Nationality Act, Section 240A, the cancellation of removal statute. The issue before the court today is whether Congress intended the permanent stop-time rule to be applied retroactively to crimes committed before the rule went into effect on April 1, 1997. And the rule went into effect on April 1, 1997 as part of IRIRA, the Illegal Immigration Reform and Immigrant Responsibility Act. Now Mr. Jaghoori came to the United States from Afghanistan as a refugee as a child. He adjusted to lawful permanent residence as of April 25, 1989 at age 12. On May 31, 1995, he pleaded guilty to felony credit card theft in Fairfax County, Virginia for a theft he committed on February 27, 1995. He was sentenced to 90 days in jail. Now Mr. Jaghoori's conviction did not render him deportable or removable under any provision  The guilty plea also had no effect on Mr. Jaghoori's accumulation of seven years of continuous residence. According to the legal regime in place included INA Section 212C, which provided for relief from deportation for lawful permanent residence who had resided in the United States for seven consecutive years, and also INA Section 244A, suspension of deportation, which provided for suspension of deportation for otherwise deportable aliens who had been physically present in the U.S. for at least seven years. And as the Supreme Court points out to us in INS v. St. Cyr, the seven years of continuous presence or continuous residence has been an important interest for aliens to accrue since 1917. At the time, and it wasn't until IRIVER went into effect on April 1, 1997, that there was any provision of our nation's immigration laws that stopped the clock on accrual of continuous residence. Mr. Jaghoori could plead guilty to theft. He could give up his constitutional rights to confront his witnesses, to present his evidence, and to have a trial by jury. He could give up those constitutional rights, confident that his guilty plea had no impact on his years of continual residence. So the detrimental effect of retroactive application would be the possibility that he would not have entered into a guilty plea. He would have gone to trial. Those are the facts in this case. I do not think that detrimental reliance is required. It helps. The reliance issue does help strengthen the argument against retroactive application. I understand that we have to contend with Olatunji, if I'm pronouncing that correctly. Yes. But what I'm trying, I was gathering from the formulation of your argument that your position is that we should not apply the permanent stop time rule retroactively because it would, because it revives or creates negative consequences that attach to conduct that occurred before. Exactly, Your Honor. It was enacted, the statute was enacted. Yes. I rest particularly that the permanent stop time rule attaches new legal consequences to the 1995 guilty plea. In 1995, Mr. Jigori could plead guilty confident that he would continue to accrue years of continuous residence. Now, Iraira didn't change that, did it? Yes. I mean, I don't understand. I mean, he had not committed his fraud, 2010 fraud violation until after Iraira was enacted. Yes. And so up until that point, his status had not changed at all. Iraira did change his legal status. On March 31st, 1997, Mr. Jigori's legal status was that he was a lawful permanent resident. He had committed one crime involving moral turpitude that did not render him deportable, and he had accrued more than seven years of continuous residence, and he would be eligible for discretionary relief should he need it in the future. And that wasn't changed by Iraira at that point? Yes. What changed it is his second conviction afterwards. But the second conviction, he would only have had one conviction. It operated to make his first conviction the first of two.  That's correct. That's correct. And Judge Niemeyer, you are making the government's argument that it was not Iraira that changed the legal conduct. The Supreme Court recognized that in the travel case. What was that, Fortales or something? So what is your response to the government's argument that he brought this upon himself by his continued criminal conduct? One is, the Supreme Court reminds us in Fernandez-Vargas v. Gonzalez, the case that the government and the BIA do quote in support of their argument, the Supreme Court reminds us that in any retroactivity analysis, we must look to the conduct to which the statutory provision applies. And the conduct to which the statutory provision applies in this case, the conduct to which the BIA and the government alleges stops the clock is the 1995 offense. If the conduct to which the provision applied was only the 2010 offense, then Mr. Jogori would have had more than 20 years of physical presence, of continuous residence. And it's also important to look at the case of Fernandez-Vargas v. Gonzalez. That case analyzed the statute, the reinstatement of removal provision of INA section 240A-5. And the Supreme Court stated that that statute was not applied to the reentry of an alien after having been removed pursuant to a prior order of removal, but rather it's a process to remove the alien who has continued to be present by reinstating the prior order. So the Supreme Court told us in Fernandez-Vargas v. Gonzalez that the provision does not penalize the alien for reentry. It establishes the process to remove him. Thus, it's the continuing conduct, the post-enactment, post-IRIRA conduct, of remaining in the country after the entry that is the predicate action for the statute. And Fernandez-Vargas told us that the statute applies to stop an indefinitely continuing violation that the alien could have ended any time by voluntarily leaving the country. The statute at issue in Mr. DeGore's case attaches, we're analyzing how it attaches to a past event. And every circuit in this country that has looked at the issue has analyzed how it attaches to the past event. The 2010 guilty plea is significant because it made Mr. DeGore deportable. He wasn't deportable before that, was he? No. Okay, well, it was really his own conduct that implicated IRIRA, post-IRIRA conduct. But the point is whether IRIRA is retroactive, not whether his conduct brings him within the scope of IRIRA. Thank you, Your Honor. IRIRA had an impermissible retroactive effect on the accumulation of the seven years. And it's the seven years, the interest in accumulating the seven years, which is the interest that IRIRA had an impermissible retroactive effect on. The day before IRIRA? Well, it only affected him. It didn't affect him adversely if he didn't commit a crime. It affected him adversely by denying him the ability to have two crimes. And the law doesn't, you can't base any expectations, statutory expectations on commission of crime, can you? Well, I think we need to look at the task at hand, which is to interpret the statute. Did Congress intend for IRIRA to be interpreted prospectively or retroactively? Well, it's silent. Your argument is silent. It doesn't address that. I understand that. From the government's brief, I believe that the government agrees. They didn't contest our argument that the statute is silent with regard to the temporal reach. So then the question comes is whether the application creates a disability. Yes, an impermissible retroactive effect. Does it attach new legal consequences? And clearly it did. The interest was the accumulation of seven years. Mr. Jaghori, rest assured, on March 31st, 1997, that he had the seven years in his pocket. I think that Mr. Jaghori's position we can analogize to a defendant in a civil case, for example, a statute of limitations argument. And I would call your attention to a case that this court decided last year, Baldwin v. Greensboro, where Mr. Baldwin sued the city of Greensboro for discrimination under the Uniformed Services Employment and Reemployment Rights Act of 1994. Unfortunately, Mr. Baldwin sued Greensboro after the statute of limitations had expired. And after the statute of limitations ran, Congress passed the Veterans Benefits and Improvement Act. And this act eliminated the statute of limitations on those claims. And this held that the elimination of the statute of limitations could not be applied retroactively. The employer, the city of Greensboro, in that case, had an interest in letting the four years run, running the statute of limitations, accruing those four years, just as Mr. Jaghori had an interest in having his seven years run. Mr. Jaghori ran out the clock, and he accumulated his seven years, and the statute should not be applied to take his four years away. And aren't the facts, in this case, remarkably similar to the Seventh Circuit case decided just this week? Yes, decided just two days ago. In the Seventh Circuit case... Well, they didn't have a post-Erira conviction. They're just looking at pre-Erira conviction. I think the analysis is the same, Your Honor. Well, it is for the pre. But it is for the 1995 conviction. But this person was not put in jeopardy until he committed a crime post-Erira, and he knew the full consequences of, or was imputed with the full consequences before he committed the crime. Well, what is the focus of the analysis, though? Isn't the focus of the analysis, and St. Cyr tells us this, I think, is the conduct at the time it occurs. And at the time of the first conviction, whether or not Mr. Joguri would have pled guilty had he known what the consequences would be as a result of a Erira looking back. Yes, yes, that's exactly. And with the Seventh Circuit, the facts are remarkably similar. Both petitioners were permanent residents since 1989. Both had a 1995 offense that did not stop the clock at the time, and both had accumulated seven years of continuous residence prior to the enactment of Ierira. The difference is that Mr. Joguri, in the Seventh Circuit, his first offense rendered him deportable, and Mr. Joguri's first offense did not render him deportable. Well, except Ierira didn't render him deportable either. That's right. And so there were no adverse consequences before the 2010 crime. The adverse consequences, Your Honor, was interfering with the accumulation of the seven years. That doesn't happen until he commits the second one. It does happen, Your Honor. If we read the... The application doesn't apply until he committed the second crime. If he had not committed the second crime, Ierira would have had no negative implications on him. Well, Your Honor, in answer to that question, I would direct you to Olatunji that quotes the Third Circuit that talks about that even if an interest is highly contingent, that doesn't change the analysis. Even though Mr. Joguri did not need those seven years in his pocket until 2010, that doesn't change the analysis. That's Supreme Court insincere. Thank you. And with the three minutes that I have left in my primary argument, I would like to draw your attention to Clark v. Suarez-Martinez argument that the same statutory text should not be interpreted for different classes of people. In Clark v. Suarez-Martinez, the Supreme Court analyzed the post-removal period detention statute of 8 U.S.C. Section 1231A.6, which suggests the post-removal period detention of three classes of aliens, which in the statute itself, the statute divides the three classes. The first is inadmissible aliens. The second is aliens who had been admitted and who were removable. And the third is aliens determined to be a risk to the community. And in Zavidas v. Davis, a 2001 Supreme Court case, the Supreme Court had interpreted the statute to mean that aliens in the second class, aliens who had been admitted, could not be detained indefinitely. In Clark, the Supreme Court asked if it could treat aliens in the first category differently than aliens in the second category. And the court stated that its interpretation of the post-removal detention period had to be interpreted the same for both classes of aliens. The statute either authorized the indefinite detention of aliens or it did not authorize the indefinite detention of aliens. And the court told us that for this court to sanction indefinite detention in the face of Zavidas would establish the dangerous principle that judges can give the same statutory text meaning in different cases. And it's our position that if the court acknowledges that Mr. Sinote's cruise in the Ninth Circuit or Mr. Jayuti in the Seventh Circuit, if retroactive application of the stop time rule would have an impermissible effect on them, that means that Congress intended for the stop time rule only to be applied prospectively for all classes of aliens. His impairment in this case, because of the factual difference, the two crimes bracketing Herrera, the only freedom that he is denied by application of Herrera is the freedom to commit another crime. And we've never recognized that, have we? No, of course not, Your Honor. But again, the interest is the accumulation of the seven years that has been an important interest for aliens to accrue ever since 1917. It has no impact on him. And he was not removable as a result of Herrera. The question is, does Herrera have an impermissible retroactive effect on the accumulation of those seven years? And if it is applied retroactively, it does. It stops the class in 1995 when Mr. Jigori... I see that I'm out of time. You can finish your sentence, Your Honor. When Mr. Jigori pleaded guilty and gave up his constitutional rights, he was confident that he could do so without impacting his interest. And it didn't impact any interest except the interest to commit another crime. Had he not committed another crime... You understand my concern. I understand, Your Honor. Thank you. Why don't we hear from Ms. Murphy? Good morning, Your Honors. May it please the Court, Lindsay Murphy on behalf of the Attorney General. Your Honors, the stop-time rule is not impermissibly retroactive in this case. Herrera and the stop-time rule's enactment didn't interfere with any vested rights or settled expectations that the petitioner had. But that's not the test, as I understand it. And that's part of why... The question is whether it created new legal consequences for an act that has already occurred. And that's why I'm having difficulty and why it doesn't seem to me to make any difference that he committed a crime in 2010. It's the impact that Herrera had on the 1995 conviction, which was when he pled guilty, he did so with the expectation that it would not... Or with the understanding that it was not going to affect his... The portability, and now it does because it's counted. And the stop-time rule interferes with that. That's the problem I have. I don't see the relevance of... It's not a vested interest, certainly. But it does have a legal consequence. That first conviction, because of Herrera, has a legal consequence. I understand your point, Your Honor. And to what Judge Niemeyer was suggesting is that... Well, assuming that the intent of Congress is unclear from the statute, essentially what the petitioner is arguing is that he had an expectation when he pleaded guilty in 1995 to continue accruing physical presence so that he could go out and commit another crime. I understand that you want to argue that it makes for a very unsympathetic petitioner, but it doesn't have much... It doesn't carry for me much analytical force. What has happened is that the 1995 conviction now has consequences, negative consequences that it did not have at the time. And that's really the focus. Did that... Does the retroactive application of Herrera create a new legal consequence to an action that took place in 1995? And it does. You're not telling me anything to suggest that it doesn't. It does, but it's not a new legal consequence that the petitioner was helpless to avoid. That doesn't... I mean, that's not a part of the... Oh, I'm sorry. Go ahead. But reading the cases in Sincere, Vartelis, and even the Seventh Circuit's recent decision in Judy, the petitioners in those cases, they either were not rendered deportable by their pre-Herrera convictions, or they had relief that was available to them that only became unavailable because they were put into proceedings after Herrera took place. He wasn't deportable based on his 1995 conviction in 1995. That's correct. And he wasn't deportable the day after Herrera and the stop-time rule went into effect. He wasn't deportable for the next 12, 13 years. So you have to rely on conduct post-Herrera to say that he's not affected by Herrera, and that is not my understanding of the inquiry. My understanding of the inquiry is, does Herrera effect create legal consequences for the 1995 conviction? It does, but only because of his second conviction, which rendered him removable. And how does that factor into the analysis? The people who enter into plea agreements with the expectation that they would be eligible for certain relief, which then becomes denied to them, is an impermissible retroactive effect, correct? Yes, but the petitioner here didn't have any expectation that he'd be eligible for relief. He wasn't removable. In 1995, he certainly had every reason to believe that the 1995 guilty plea would not affect the status that is now affected. That's correct, Your Honor. And with the simple passage of ERA-ERA, the stop-time rule, his expectations weren't affected. And really, when the courts have applied this Landgraf Step 2 test, all of the cases with respect to the retroactive application of provisions of ERA-ERA, all of those cases involve situations where the aliens had certain expectations that were upset automatically, through no fault of their own, with the passage of ERA-ERA. And that's clearly not the case here. Do you have any authority for the proposition that future conduct, I mean, post-ERA-ERA conduct determines the retroactive effect of a statute in conjunction with pre-statute conduct? Yes. Well, I would point to the Supreme Court's decision in Fernandez-Vargas, where it essentially said that it was the petitioner's continuing violation. So prior to ERA-ERA, Fernandez-Vargas would have been, I believe, eligible to adjust status, despite the fact that he had reentered the country unlawfully and could have been subject to reinstatement proceedings. However, he wasn't put into proceedings until after ERA-ERA, and at that point was no longer eligible to adjust status. And what he was arguing to the court was, wait a minute, before ERA-ERA, I would have been eligible to adjust status, so you can't apply this law retroactively to me. And what the court said was, it was your continuing violation that made you subject to ERA-ERA. You didn't have to remain in the country and continue your unlawful presence here through and past 1996 and into 1997 when ERA-ERA went into effect. And so essentially there, the court looked at the petitioner's unlawful conduct post-ERA-ERA, which made him subject to the ERA-ERA regime. And so that's the most closely analogous case to this case. Thank you. Sure, Your Honor. And with respect to the petitioner's argument that the same statute may not figure it differently with respect to different classes of aliens, as I indicated in the 28-J letter filed yesterday morning, the cases that petitioner cites do not support that proposition. The INA has a history of distinguishing between different classes of aliens, and in the cases that petitioner cites, including Judalong and Clarkview-Martinez, in those cases it's not a situation, or the courts essentially found that the distinctions that the agency was drawing were arbitrary, and they weren't founded or tied to any purposes related to the INA and the immigration laws. Whereas here the petitioner can't argue that Congress's interest in not having aliens go out and commit crimes isn't tied to the purposes of the INA, and so I would argue that those cases are distinguishable. And if the panel has no further questions, we'll submit. Thank you. All right, thank you, Ms. Murphy. Ms. Jessup. Thank you, Your Honors. I would encourage Your Honors to take a look again, a close look at Fernandez-Vargas v. Gonzalez. Again, the court explicitly stated that they were not analyzing the statute with respect to a past act. The statute regarding the reinstatement of removal provision, the Supreme Court stated It was a continuing It was a continuing act. It established a process to remove an alien according to the prior order of removal, immediately and without relief. It's a different analysis here. I would encourage you to examine the statute and the task at hand. The task at hand is to determine congressional intent. Did Congress intend for the statute to be applied retroactively only or prospectively only? And again, I would also encourage the court to look at Clark v. Suarez-Martinez. The letter that we did submit to the court two days ago saying that the same statute may not be interpreted differently was not as artfully crafted as I should have. The same exact statutory provision cannot be interpreted differently for two different classes of people. Especially, as the Supreme Court tells us in Clark v. Suarez-Martinez, there the statute divided different aliens that were affected by the statute in three classes. And the Supreme Court told us that we need to treat all of those. The statute is either authorizing indefinite detention or not authorizing indefinite detention. And it must be interpreted the same way for each class of alien. And, Your Honor, the court did follow Clark v. Suarez-Martinez in a case last year, Patel v. Holder. That's 706 F. 3rd, 370. In interpreting 8 U.S.C. Section 101, the definition of a national of the United States. Again, we ask that you look at the effect of the statutory provision on the past act. Mr. Jaghori had an interest in continuing to accrue those seven years. The fact that he did not need those seven years until the future doesn't have an effect. Just like Hughes Aircraft did not need a defense to the quitem action during the past act. The statute of limitations, or the act that eliminated the defenses, the Supreme Court ruled that those were impermissibly retroactive. So that we ask that the court vacate the board's order and remand the case for administrative proceedings to conduct a cancellation of removal hearing. Thank you, Your Honor. Thank you, Mr. Jaghori. We'll come down and greet counsel, adjourn court for the day.
judges: Paul V. Niemeyer, Allyson K. Duncan, Stephanie D. Thacker